IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CRIMINAL ACTION NO. 2:24-cr-00043

CORY THOMAS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Revoke Detention Order* (Document 24), the attached transcript of the detention hearing (Document 24-1), the United States' *Response to Defendant's Motion for Revocation of Detention Order* (Document 25), and the *Defendant's Reply in Further Support of Motion to Revoke Detention Order* (Document 27). The Court has also reviewed the Pretrial Services Report (Document 22), the Magistrate Judge's *Order of Detention Pending Trial* (Document 14) and *Order* (Document 18) directing that he be detained, as well as the Memorandum submitted by Probation on April 5, 2024 with a home assessment as to the Defendant's father's residence.

**FACTS AND PROCEDURAL HISTORY**

On March 6, 2024, a grand jury returned an *Indictment* (Document 1), charging the Defendant, Cory Thomas, with possession of prepubescent child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). The Defendant was arrested on March 14, 2024 and

made an initial appearance on that date. Magistrate Judge Aboulhosn held an arraignment and detention hearing on March 20, 2024.

The United States indicated that the investigation in this matter, which is not complete, has uncovered over 100 images of child sexual abuse material, and it expects to find more based on an interview with the Defendant and the ongoing forensic analysis of his electronic devices. It expressed concern that the Defendant was employed as a counselor and met with groups of children in elementary schools prior to leaving his employment as a result of the investigation. The United States also noted a potential concern regarding self-harm, particularly given that the Defendant lived alone.

The Defendant called his ex-wife and his father as witnesses. His ex-wife described the typical custody arrangements as to the two young children she shares with the Defendant and indicated that she would be able to keep the children full time and/or supervise visitation as needed. She also stated that she would be able to facilitate removal of the internet connection and installation of a landline at the Defendant's residence if needed and could provide transportation to bring the Defendant to Court proceedings if needed. Although she was unaware that he had engaged in collecting child pornography, she testified that she believed the Defendant was not a danger to the community and would "never hurt anybody." (Tr. at 16:1.)

The Defendant's father lives alone in an apartment in Nitro, West Virginia, and testified that he would be willing to have the Defendant live with him or move into the Defendant's home and serve as a third-party custodian. He is retired and indicated that he would be willing to leave his part-time employment to be home full-time and could transport the Defendant to court proceedings if needed. He stated that he was willing and able to remove the internet connection

and obtain a landline connection in his apartment and could ensure that any devices capable of accessing the internet were password protected. He testified that no children visit his apartment, and there are no children living in other apartments within his apartment block, although there are children elsewhere in the larger apartment complex. He testified that he did not believe the Defendant posed a threat to the community and verified that he would report any violations of the terms of bond, should the Defendant be released.

The Pretrial Services Report prepared in this matter indicates that the Defendant has lived in the Southern District of West Virginia since he was five years old with the exception of time stationed elsewhere during his military service. He has lived at his current residence since 2018. He has been divorced since 2022 and has two minor children who typically visit him on weekends. A criminal records check revealed only traffic offenses. Since being honorably discharged from the military in 2022, he has been employed as a substitute teacher and as a contracted counselor. He has mental health diagnoses for which he receives treatment and is prescribed medication by a doctor in Charleston, West Virginia. On the advice of counsel, he declined to answer questions regarding computers and electronic devices in the home, his internet and cellular service, whether he spends time at locations other than his residence, and whether he has access to minors other than his children. Because he declined to answer those questions, Probation found that it could not determine whether his "current living situation is suitable for pretrial bond supervision." (Pretrial Services Report at 2.)

Magistrate Judge Aboulhosn expressed frustration that the Defendant had not provided Probation with all requested information, finding that the questions at issue involved information the Court would need to evaluate the safety of the community should the Defendant be released.

He found that the United States had not met its burden of establishing by a preponderance of the evidence that the Defendant would pose a risk of failure to appear. However, he concluded that the United States had established by clear and convincing evidence that the Defendant posed a danger to the community. Judge Aboulhosn noted that the Defendant's witnesses did not appear to recognize the danger posed by simply possessing child pornography. He further explained that the Defendant's prior position working with children raised concerns about a potential breach of trust or harm to others in the community.

## STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3145, "[i]f a person is ordered detained by a magistrate judge…the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "A defendant ordered detained by a magistrate may seek *de novo* review in the district court." *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). 18 U.S.C. § 3142 governs the release or detention of defendants pending trial. Defendants are to be released on personal recognizance or an unsecured appearance bond with only conditions prohibiting commission of crimes while released and requiring cooperation with DNA collection "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court makes such a finding, defendants are to be released "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c)(1)(B). Factors that courts consider when determining whether there are conditions of release that will reasonably assure the

4

appearance of the person and the safety of any other person are found in 18 U.S.C § 3142(g) and include: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person; (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or community that would be posed by the person's release.

## DISCUSSION

The Defendant argues that the United States did not meet its burden of proving, by clear and convincing evidence, that no combination of conditions could reasonably assure that he will not pose a danger to the community. He argues that a combination of conditions requiring him to reside, on home confinement, with his father as third-party custodian, and without access to the internet, would be sufficient to reasonably assure the safety of the public. He emphasizes that there is no evidence that he has ever had inappropriate contact with children, and conditions limiting any unsupervised access to children would address any risk. He contends that conditions requiring that monitoring software be installed on any internet-capable devices accessible to the Defendant, or a total ban on internet access, would ameliorate any risk that he could view child pornography while on bond. The Defendant argues that Judge Aboulhosn "appeared to place undue weight upon" his failure to answer certain questions, explaining that defense counsel "has valid reasons to advise a client not to answer" some questions when counsel has not yet had the opportunity to fully review the case and determine whether answers could be prejudicial to a potential defense. (Mot. at 10.) He argues that the Pretrial Services Report and the testimony during the detention hearing provided sufficient information to establish that release under the proposed conditions would be appropriate, and he outlines proposed conditions designed to address each potential risk cited by the United States.

The United States argues that detention is appropriate. It emphasizes the strength of the case against the Defendant. It notes that the Defendant was employed as a counselor and met with elementary school students during the time that he was collecting child pornography. The United States argues that there are parks, schools, and children who live in the general area around his and his father's homes and suggests that his father's testimony that he does not believe the Defendant would "act on" a sexual interest in children indicates that his father, as a proposed third-party custodian, does not adequately recognize the harm caused by possession of child pornography.

At the Court's request, Probation submitted a home assessment of the Defendant's father's residence. The Defendant's father lives in a one-bedroom apartment located in a residential neighborhood, with no children residing in his building. He cares for a six-year-old grandchild two to three times per week in his daughter's home. Probation found that the proposed release residence was suitable for bond purposes, but that Mr. Thomas's father would not be a suitable third-party custodian because of the time he spends caring for his grandchild.

The Court finds that the United States has not met its burden of establishing, by clear and convincing evidence, that "no conditions other than detention will reasonably assure the safety of any other person and the community." *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005). The Defendant has no significant criminal history, and so the potential danger is that related to the charged offense. The United States has shown that there is strong evidence against the Defendant, which supports a finding that there is a risk that he could continue to view and possess child pornography. However, the Defendant has proposed conditions limiting his access to the internet, and the United States has not provided any explanation as to why such conditions

would not reasonably assure that he would be unable to access such material. The Court is not convinced that the proposed third-party custodian's testimony that he did not believe the Defendant would commit a contact offense somehow indicates that he does not view possession of child pornography as a serious offense. The Defendant's father testified that he could limit access to any internet-capable devices with passwords and prevent the Defendant from accessing the internet. He clearly recognized that restrictions on the Defendant's internet access are appropriate and expressed his willingness to enforce such restrictions, including cancelling internet service to his residence.[1] Thus, the Court finds that conditions requiring monitoring software and permitting searches of all internet-capable devices used by the Defendant, and limiting his access to any devices used by his father, will suffice to protect the public from any risk that he would view or possess child pornography.

The United States also suggests that the Defendant poses a danger to any children with whom he may have contact. There is nothing in the record to indicate that the Defendant has any history of, or any charges related to, sexual contact with children, and to the extent evidence of possession of child pornography is indicative of a risk that a Defendant may have a proclivity to commit a contact offense, the Court finds that the conditions proposed herein are sufficient to ameliorate that risk. No children live in his father's apartment building, and his father and his ex-wife are available to supervise visits with Defendant's children. He is no longer employed in a role that involves contact with children. Release on home confinement with electronic monitoring

---

[1] The Court has imposed conditions permitting searches of computers and other electronic devices and prohibiting use of a computer or other device until a Computer Use Agreement is developed and approved by the pretrial officer. These conditions are intended to provide flexibility for the pretrial officer to work with the Defendant's father, as third-party custodian, to establish reasonable limits on the Defendant's access to internet-capable devices without requiring that the household forego internet service entirely unless they choose to do so.

should prevent contact with any children who live nearby or attend schools or parks in the general vicinity of the Defendant's release residence.[2]  The schools and parks identified by the United States and Probation were located more than a half-mile from the residence, limiting the concerns that might arise where a defendant with similar charges lives within sight of places children congregate.  A condition prohibiting communication with minors except in the presence of their parent or guardian and with written approval from the probation officer will further ensure that the Defendant has no opportunity to pose a physical risk to the safety of any child.   Home detention and location monitoring are sufficient to ensure the Defendant remains in the residence during periods when his father is absent for employment or to provide childcare for his grandchild.

In short, the United States did not point to any risk to the safety of any other person or the community that would persist under the release conditions proposed by the Defendant.   Therefore, the Court finds that detention is more restrictive than necessary to reasonably assure the safety of any other person and the community.   As the Magistrate Judge found, the Defendant does not pose a risk of non-appearance.[3]   Thus, the Court will direct that he be released to his or his father's residence, with his father as a third-party custodian, with conditions requiring that he remain on home detention with electronic monitoring, and conditions limiting his access to the internet and electronic devices, as set forth in the Order Setting Conditions of Release.

---

2 In this motion, the Defendant proposed his father's residence as a release residence.   During the detention hearing, he suggested either living with his father at his residence or having his father live with him in his home.   Both residences appear appropriate for release purposes, and the Court leaves which residence the Defendant and his father live to their discretion, assuming a landline can be installed at either place for the purpose of location monitoring.
3 The sole fact related to risk of non-appearance proffered by the United States was some indication that the Defendant may pose a risk of self-harm.   Prior to his arrest, he was receiving mental health treatment within the community, and the Court finds that continuation of that treatment, together with the condition requiring that he reside with his father, will serve to limit any risk of suicidal ideation or self-harm.

**CONCLUSION**

Upon careful consideration and thorough review, the Court **ORDERS** that the *Defendant's Motion to Revoke Detention Order* (Document 24) be **GRANTED** and that the *Order of Detention Pending Trial* (Document 14) be **REVOKED**. The Court further **ORDERS** that the Defendant be **RELEASED** on a Ten Thousand Dollar unsecured Appearance Bond, subject to the conditions set forth in the Order Setting Conditions of Release filed separately and that the Defendant be released from South Central Regional Jail to his father, Jeff Thomas, within five (5) days of entry of this Order. Upon his release, it is **ORDERED** that the Defendant report directly to the United States Probation Office and be placed on home detention with location monitoring. The Court **DIRECTS** Probation to communicate with the Defendant's father and his counsel regarding setting up location monitoring. Finally, the Court **ORDERS** that the Defendant execute an Appearance Bond upon his release.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: April 8, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA